IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

JEAN M. KING,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,
and USDA SECRETARY OF
AGRICULTURE MICHAEL O.
JOHANNS, in his official
capacity,

      Defendant.

**No. 06 CV 4023-DEO**

**ORDER**

_____

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 2

II.  FACTS  . . . . . . . . . . . . . . . . . . . . . . . . 3

III. LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . 12

IV.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . 15
        A.  Direct Evidence  . . . . . . . . . . . . . . . 15
        B.  Indirect Evidence  . . . . . . . . . . . . . . 16
            1.  Prima Facie Case . . . . . . . . . . . . . 16
            2.  Legitimate, non-discriminatory reasons . . 17
            3.  Pretext . . . . . . . . . . . . . . . . . . 21

V.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . 24

## I.   INTRODUCTION

The plaintiff, Jean King, filed this action against her employer, the United States Department of Agriculture ("USDA").  The action alleges violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Iowa Civil Rights Act; and the Age Discrimination and Employment Act, 29 U.S.C. § 623 ("ADEA").  Plaintiff, a fifty-four (54) year old woman at the time of the filing, claims that she was discriminated against based on her age when she applied for an internal position within her department for which she was well qualified, but the job was given to a twenty-five (25) year old who had only a few months experience with the USDA. Plaintiff has alleged mental and emotional harm with physical manifestations, humiliation, embarrassment, fear and loss of enjoyment of life.   In addition to the damages for these injuries, she is asking for punitive damages, costs, and fees.

The Government has denied all of the substantive allegations against it; specifically, that the plaintiff was discriminated against.   The Government filed a motion for summary judgment which was denied by this Court on October 3, 2007 (Docket No. 32).  The case then proceeded to bench trial

commencing on October 15, 2007.   For the reasons set forth herein, the Court finds that the defendant did not discriminate against the plaintiff on the basis of her age and dismisses the case.

## II. FACTS

Jean King had worked for the USDA since 1987 and had been a "single family housing technician" in the Rural Development ("RD") department since 1992.   RD is a section of the USDA "committed to helping improve the economy and quality of life in all of rural America."   See www.rurdev.usda.gov.   USDA RD assists rural areas in many ways such as through economic and agricultural development, public facilities and services, and housing.   Id.

In January of 2005, two vacancies were announced for "single family housing specialist" positions, located the Iowa towns of Albia and Le Mars, respectively.[1]   Among other

---

[1]At the time of announcement, the position in Albia was held by Virgene Ryan, a witness for the plaintiff who was over fifty years of age.  Ms. Ryan had all but been told that she would continue to have the job, but due to agency requirements, she had to "reapply" for the position.   The evidence at trial indicated that agency rules required the job opening to be posted; but once some required red tape was cleared in Washington, D.C., Ms. Ryan would be reappointed to
(continued...)

things, specialists are responsible for writing housing loans and grants for persons living in rural Iowa. The specialist position was described at trial as one step above the "technician" position in that there is much overlap in the specialist and technician positions. Both have similar knowledge base, but specialists have the additional responsibility of signing off on rural development loans.

The specialist vacancy announcement required candidates to meet certain basic eligibility requirements either based on education or specialized experience. Mrs. King applied for the specialist vacancy in Le Mars, Iowa. She did not possess a bachelor's degree, but she met the eligibility requirements of the position based on her experience at USDA as a single family housing technician.

Catherine Evans,[2] a community and business program

---

[1](...continued)
the position. Ms. Ryan was ultimately reappointed to the position. Thus, there was really only one position "open", i.e., the one at issue here.

[2]The Court learned at trial that Ms. Evans, as she had been called in all documents to the Court prior to trial, had recently been married. She testified that her married name is Catherine Sand. The parties agreed to use the name "Evans" throughout the trial, however. The Court is persuaded that
(continued...)

technician at USDA for approximately five months, also applied
for the Le Mars, Iowa, specialist position.  When she applied,
Ms. Evans was approximately twenty-five years old.  Ms. Evans'
prior employment included work for the Iowa Democratic Party
and as a bank teller.  She also met the eligibility
requirements for the specialist position because she held a
Master's degree in political science and public
administration.  Although there was much debate during the
trial over which candidate was more qualified, the Court is
persuaded that both Mrs. King and Ms. Evans met the basic
eligibility requirements set forth in the specialist vacancy
announcement found at Trial Exhibit 2.

Six people, including Mrs. King and Ms. Evans, applied
for and were determined to be qualified for the specialist
position.  The hiring process consisted of reviewing the
written application materials and conducting telephone
interviews.  Once the interviews were conducted, the hiring
committee met to discuss the candidates and make a selection.

---

[2](...continued)
use of the name "Evans" is appropriate in this Order since the
evidence, including testimony and exhibits, overwhelmingly
reflects the same.

The hiring committee consisted of RD State Director, Dr. Daniel Brown; RD Regional Director, David Dunfee; RD Program Specialist, Tim Helmbrecht; and Human Resources Manager, Denise Toney.  Mrs. Toney was also responsible for coordinating all application materials when first received and anonymously ranking the candidates' written applications to ensure eligibility.  These rankings were not seen by the other committee members.

The evidence presented by both parties at trial clearly shows that the hiring committee considered Mrs. King and Ms. Evans to be the top two candidates.  Ultimately, Ms. Evans was offered and accepted the specialist position in Le Mars.  The Government set forth evidence as to the rationale behind the hiring decision.

Mr. Dunfee, who was Mrs. King's supervisor, testified that Ms. Evans was chosen for the position because the RD office was looking for someone to do more outreach in servicing rural housing loans and Ms. Evans presented a go-getter attitude.  Also, she had a college degree, which was something that interested them.  Mr. Dunfee testified that age was not an issue in the hiring process.  He also testified

that Mrs. King threatened to sue if she was not hired.  In later testimony, Mrs. King denied making this threat. Regardless, Mr. Dunfee testified that Mr. Helmbrecht and Ms. Toney were brought into the hiring process because of this threat and to ensure that the process was handled properly.[3]

Mr. Helmbrecht's testimony mirrored Mr. Dunfee's in that he said Ms. Evans' application stood out because of her Master's degree, among other things.  Ms. Evans also had RD experience and had worked at banks, which the committee felt would be helpful in processing housing loans.  Mrs. King, according to Helmbrecht, had the experience necessary but did not have a college education.  Additionally, during the telephone interview, Ms. Evans was very positive and up-beat and provided in-depth answers to the questions posed. Helmbrecht testified that Mrs. King's interview came off as negative, and she did not contribute new thoughts or ideas for the RD office.  The decision to hire Ms. Evans was unanimous

---

[3]The Court has not considered the alleged threat in its determination as to whether Mrs. King was discriminated against based on her age.  If Mrs. King, in fact, threatened to sue, that was not a smart move.  However, even if the defendant decided not to hire Mrs. King because of this contended threat, that is not evidence of age discrimination.

among the four committee members, Helmbrecht testified. Helmbrecht also stated that he was on the hiring committee because of the threat to sue made by Mrs. King. (Helmbrecht was Ms. Toney's supervisor.)

Dr. Brown, unfortunately, passed away prior to the trial. Dr. Brown was, however, deposed early on in the conflict; and the Court admitted that deposition testimony into evidence at trial. The Court is persuaded, based on his deposition testimony and the testimony by others at trial, that Dr. Brown desired to hire a specialist with post-secondary education. He made that intention known to the others on the hiring committee, and he testified to the same at his deposition. He, personally, had been an educator for most of his adult life. Higher education was very important to him.

Kimberly Clay and Sonia Pierce, both RD employees during the relevant time period, testified that when Ms. Evans was hired, Mr. Dunfee made comments that he had just hired a young, skinny blonde. Mrs. King also testified that Mr. Dunfee said they hired a tall, young blonde with a Master's degree. The evidence, including that of the plaintiff herself, showed, however, that these comments were made months

before when Ms. Evans was hired for her program technician position, not at the time of the hiring of the specialist position at issue here.  Mrs. King worked for Ms. Clay, who was a multiple housing specialist for many years.  Ms. Clay testified very highly of Mrs. King's knowledge and abilities. Ms. Pierce testified that Mrs. King was her mentor and that she was very competent in her position.  If anyone had a question about the housing specialist or technician duties, Mrs. King would have the answer.

The plaintiff presented evidence that she claims showed age discrimination.  In addition to the "young, tall blonde" comment, Mrs. King testified that Dr. Brown made several comments that Mrs. King alleged are evidence of age discrimination.  Mrs. King testified that Dr. Brown referred to her and the older workers as "has-beens."  She also testified that Dr. Brown made comments about "oldies" being replaced with "newbies."

Plaintiff's witness, Cherie Byrum, testified that at a meeting in 2004, Dr. Brown made a statement to a group of people, including herself and Mrs. King, that the "has-beens" have to listen to the "newbies."  After making this remark,

Ms. Byrum and Mrs. King left.  According to Ms. Byrum, Dr. Brown followed them down a hallway on his hands and knees apologizing for the comment and asking for their forgiveness. This testimony was corroborated by Mrs. King.  There was some evidence that this occurred at a social event and that at least Dr. Brown, perhaps others, had been consuming alcohol. The Court has carefully considered this incident.  It certainly is not a plus as to Dr. Brown's background, but it cannot be magnified to amount to intentional and/or illegal discrimination as discussed on pages 22 and 23 of this ruling.

The plaintiff also argued that there was a pattern of discrimination within RD due to a departmental reorganization. Evidence was presented that RD employees, Mildred Oxley (age 63) and Patty Sheets (age 70), were given the option of early retirement or relocation to another office some distance away. Due to a reorganization in 2004, 10 of the 19 offices in Iowa were closed.  However, evidence was also presented that Dr. Brown made sure that nobody lost his or her job and that if employees retired, they were offered full benefits.

The defendant elicited testimony from RD employees Karen Riskedahl and Karen Triplett that Mrs. King was not present

when these alleged comments were made.  Ms. Riskedahl
testified that the "newbie" comment was made in 2004, and it
was referring to "newbie ideas."  Ms. Triplett testified about
comments Dr. Brown made in 2003, at a work party, indicating
his desire to bring in educated, young blood into the RD
department.  Mrs. King was not present when these statements
were made, according to Triplett's testimony.

The parties presented evidence at trial that the Court
has not considered in rendering its decision here and feels
compelled to identify the same.  Evidence of Mrs. King's
conduct after the hiring decision was made was not considered.
Similarly, evidence of Ms. Evans' work performance once hired
as a specialist was not considered.  Evidence of Ms. Evans'
manner and style of dress after the hiring was not considered.
The Court finds this evidence to be irrelevant to the issue of
whether Mrs. King was discriminated against because of her
age.  The actions of Ms. Evans and Mrs. King *after* the hiring
decision was made and implemented are irrelevant to the issue
of whether age was a consideration used to make that

decision.[4] Furthermore, evidence of Ms. Evans' office attire does not help the Court determine if Mrs. King's employer improperly used *age* as a criteria in the decision making process, so that also was not considered.

## III.  LEGAL STANDARDS

"The ADEA prohibits employers from discriminating against employees, age 40 and over, because of their age." Ward v. International Paper Co., 509 F.3d 457, 460, 2007 WL 4245678, 2 (8th Cir. 2007)(citing 29 U.S.C. § § 623(a)(1), 631(a)). In order to be successful in an age discrimination case, the plaintiff must prove her case by direct or indirect evidence.

> Direct evidence is evidence that establishes a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006), quoting Thomas v. First Nat'l

---

[4]The Court does note, however, that statements made after the hiring decision was implemented, explaining why the decision maker chose one candidate over another, may be relevant.  For example, had Dr. Brown made a statement after Ms. Evans was given the job that he did not hire the plaintiff because she was over the age of 40, which there is no evidence that he did, but that surely would be relevant to the Court's determination here.

> Bank of Wynne, 111 F.3d 64, 66 (8th Cir.
> 1997); Twymon v. Wells Fargo & Co., 462
> F.3d 925, 933 (8th Cir. 2006).  Direct
> evidence includes "evidence of conduct or
> statements by persons involved in the
> decision making process that may be viewed
> as directly reflecting the alleged
> discriminatory attitude, where it is
> sufficient to support an inference that
> discriminatory attitude more likely than
> not was a motivating factor." Id. at 966.

Shaffer v. Potter, 499 F.3d 900, 904 (8th Cir. 2007).

" '[D]irect evidence' does not include 'stray remarks in the

workplace,' 'statements by nondecisionmakers,' or 'statements

by decisionmakers unrelated to the decisional process

itself.'" Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th

Cir. 2006)(citing Browning v. President Riverboat

Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998)

(quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109

S.Ct. 1775 (1989)).

Indirect evidence requires the Court to analyze the facts

under the "burden-shifting framework of McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973)." Shaffer, 499 F.3d at

905-906.  A plaintiff must first set forth a prima facie case

showing that:

> (1) she was a member of a protected class,
> (2) she was qualified for her job,

> (3) she suffered an adverse employment
> action, and
> (4) there are facts that give rise to an
> inference of gender discrimination.

Id. at 905 (citing Holland v. Sam's Club, 487 F.3d 641, 644-45
(8th Cir. 2007); Rodgers v. U.S. Bank, 417 F.3d 845, 850 (8th
Cir. 2005)).

If she sets forth a prima facie case, the "burden of
production then shifts to the employer to articulate a
legitimate, non-discriminatory reason" for its hiring
decision. Twymon v. Wells Fargo, 462 F.3d 925, 934 (8th Cir.
2006)(citing Johnson v. Ready Mixed Concrete Co., 424 F.3d
806, 810 (8th Cir. 2005)).  The last step, reached only if the
employer sets forth a legitimate, non-discriminatory reason
for its decision, rests with the plaintiff.  She must "then
demonstrate by a preponderance of the evidence that the stated
non-discriminatory rationale was a mere pretext for
discrimination."  Id. at 935 (citing St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 125 L. Ed. 2d
407 (1993)).  "In considering the pretext issue, 'our inquiry
is limited to whether the employer gave an honest explanation
of its behavior,' not whether its action was wise, fair or
correct."  McKay v. U.S. Dept. of Transportation, 340 F.3d
695, 700 (8th Cir. 2003)(citing Harvey v. Anheuser-Busch,

14

Inc., 38 F.3d 968, 973 (8th Cir. 1994)).

> Federal courts do not sit as a super-
> personnel department that reexamines an
> entity's business decisions...Rather, our
> inquiry is limited to whether the employer
> gave an honest explanation of its behavior.

Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir.
1994)(citing Clay v. Hyatt Regency Hotel, 724 F.2d 721, 725
(8th Cir. 1984), for the proposition that, "While an
employer's judgment may seem poor or erroneous to outsiders,
the relevant question is simply whether the given reason was
pretext for illegal discrimination.").

Additionally,

> [S]ome causal relationship is necessary to
> demonstrate the significance of
> non-contemporaneous statements, or
> statements made by persons other than the
> relevant decision-maker, to the resolution
> of the ultimate issue of intentional
> discrimination.

Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir.
1995).

## IV.   ANALYSIS

### A.   Direct Evidence

The Court is not persuaded that the evidence at trial

amounted to direct evidence of age discrimination.  Comments,

such as "has-beens," "oldies," and "newbies" were made in

different contexts that definitely force one to raise an

eyebrow as to their meanings.  However, as the evidence was

set forth by both parties, the Court cannot say that it was sufficient to show those in hiring positions were actually motivated by age discrimination.  In other words, the Court is not persuaded that the plaintiff made the "specific link" between the comments elicited through testimony and the hiring decision.  For that reason, the Court finds that the plaintiff did not prove direct evidence of age discrimination.

**B.  Indirect Evidence**

Because the Court finds that plaintiff did not prove direct evidence of age discrimination, the Court then moves on to the McDonnell Douglas analysis.

**1.  Prima Facie Case**

Both sides concede, and the Court independently finds, that the plaintiff has set forth a prima facie case of age discrimination under the first step of the McDonnell Douglas analysis.  Evidence showed that Mrs. King was at least 40 years of age during the relevant period of time.  Mrs. King also met the requirements for the specialist position. Although Mrs. King was not fired from her job, she did suffer an adverse employment action.  The Eighth Circuit has recognized failure to promote as an adverse employment action

16

for ADEA purposes.  Mc Kay v. U.S. Dept. of Transportation, 340 F.3d 695, 698 (8th Cir. 2003).  Lastly, the plaintiff did present evidence that would give rise to at least an inference of gender discrimination.  The plaintiff's testimony at trial as to the "tall, young blonde," "has-beens" and "oldies/newbies" comments give this inference.  Thus, the Court finds that the plaintiff set forth a prima facie case of age discrimination.

### 2.  Legitimate, non-discriminatory reasons

Having so found, the next step in the McDonnell Douglas analysis is to determine whether the defendant set forth legitimate, non-discriminatory reasons for its hiring decision.  The testimony of those on the hiring committee presented several non-discriminatory reasons for their decision to hire Ms. Evans over Mrs. King.  The committee members testified that Ms. Evans' Master's degree was a major consideration in their decision.  Additionally, Ms. Evans was very up-beat, offered new ideas for the RD department and had a go-getter, "fire in the belly" attitude they were looking

for to push more loans.[5]  The committee members also stressed
Ms. Evans' good communication and computer skills and prior
loan writing experience at RD as additional reasons for their
decision.  Although all of the committee members agreed that
Mrs. King and Ms. Evans were the best two candidates, they
ultimately thought that Ms. Evans was the right person for the
job.  Additionally, Dr. Brown noted that Mrs. King had a
negative phone interview and failed to offer any new ideas for
the RD department.  Although qualified for the position, she
also did not have the college education Dr. Brown was seeking.

First, the Court notes that recruiting recent college
graduates is not, *per se*, evidence of age discrimination.
Grossman v. Dillard Department Stores, Inc., 109 F.3d 457, 459
(8th Cir. 1997).  See also Williams v. General Motors, Corp.,
656 F.2d 120, 130, n. 17 (5th Cir. 1981)("[T]he bare fact that
an employer encourages employment of recent college and

---

[5]The Court does note, however, that testimony was brought
out at trial that indicated that, prior to Ms. Evans' joining
the specialist team, the RD department was not focusing on
pushing loans.  They had people there who could do that but
management chose not to make that a priority.  The Court
mentions this because it is not fully convinced that RD needed
a new person to push the loans.  Had those prioritizing the
focus of the department done so earlier, they could have
increased the number of loans being made.

technical school graduates does not constitute unlawful age discrimination."). Additionally,

> Although an employer's selection of a less qualified candidate 'can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual,' it is the employer's role to 'identify [ ] those strengths that constitute the best qualified applicant.'" <u>Kincaid v. City of Omaha</u>, 378 F.3d 799, 805 (8th Cir. 2004) (quoting <u>Duffy v. Wolle</u>, 123 F.3d 1026, 1037-38 (8th Cir. 1997)). Thus, [an employer] is free to select its own criteria for evaluating and selecting candidates for employment. This Court cannot second guess the [employer]'s chosen selection criteria, and [the plaintiff] cannot suggest what qualifications should be given the most weight. "The employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 781 (8th Cir. 1995).

<u>Carlisle v. St. Charles School Dist.</u>, 507 F. Supp. 2d 1018, 1025 (E.D.Mo. 2007).

Evidence that an employer interviewing committee unanimously picked one candidate over another because of her superior communication skills and all applicants were treated equally is not evidence of age discrimination. <u>McKay v. U.S. Dept. of Transportation</u>, 340 F.3d 695, 700 (8th Cir. 2003).

The Court is persuaded that the defendant has set forth legitimate, non-discriminatory reasons for its hiring decision.  Several of the decision-making witnesses testified to the rationale used by the hiring committee in making its decision.  The desire to hire college-educated employees is not, per se, evidence of age discrimination.  Given Dr. Brown's educator background, the Court does not find it unusual or unbelievable that he preferred applicants with college educations.  Using excellent communication skills as a criteria for selection is also a valid rationale.

The Court has not forgotten that Director Brown did not see the fine employment evaluations of the plaintiff, which this Court is persuaded was a big mistake harmful to the plaintiff.  It is further true that Regional Director Dunfee, who was well aware of these evaluations, apparently chose to be silent and did not advise Director Brown of the plaintiff's fine record even though Dunfee had authored some, if not all, of these evaluations.  The bottom line is that these mistakes or oversights were not tied in any way to age discrimination. There is no evidence that the process that the committee went through to fill the vacancy was anything but fair and even-

handed, as to age.  Thus, the Court finds that the reasons defendant set forth for its hiring decision were legitimate and non-discriminatory.

### 3.  Pretext

The plaintiff insists, however, that the rationale used by the committee was simply a pretext for age discrimination, which brings us to the last step of the <u>McDonnell Douglas</u> analysis.  The Court is persuaded that there is no question that Mrs. King was much more familiar with the duties of the specialist position than Ms. Evans.  Mrs. King had essentially been doing the specialist job, except for signing the loans, for many years.  The Court is further persuaded that Mrs. King did her technician job well.  None of the witnesses disputed this.  However, these conclusions alone are not enough to show that Mrs. King did not get the specialist job because of age discrimination.  There is a gap between the hiring decision and the evidence presented at trial that the plaintiff did not overcome.

The Court is persuaded that the plaintiff did not present evidence sufficient to show that the legitimate, non-discriminatory reasons that defendant set forth were a pretext

for discrimination.  In other words, the evidence present at trial did not prove that age discrimination was the determinative factor in Mrs. King not being hired for the specialist position.  The plaintiff presented evidence of comments made here or there but did nothing to invalidate the rationale set forth by the hiring committee or to show that defendant's explanation was not honest, i.e., that it was a pretext for discrimination.

As for the contemporaneousness of the comments made to the hiring decision, the Court is persuaded that they were not made close enough in time allow the plaintiff to overcome her burden.  The "young, blonde with a Master's degree" comment was made when Ms. Evans was hired for her first position with RD, almost a year before the interviews for the position at issue.

The Court is persuaded that the defendant's explanations of its hiring decision were honest and that they were not a pretext for illegal discrimination.  As set out on pages 21 and 22 of this Order, there were serious mistakes and oversights unfair to the plaintiff; but there was no evidence that they related to her age.  Mrs. King's "contentions and

speculation" as to the rationale behind the hiring decision are not enough. Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003).

As mentioned above, the defendant's hiring procedures were poor and/or unfair, and the Court sympathizes with the plaintiff. She worked as a technician for many years; put in her time, so to say; and when a specialist position became available, was passed over for a promotion. That is unfortunate. But, again, the Court cannot say that, based on the facts of this case, that she was overlooked because of her age. The decision was not fair or wise given Mrs. King's immense knowledge of the single family housing positions. But, it is not the place of this Court to stand in the shoes of an employer and decide hiring criteria, unless that criteria includes intentional, illegal discrimination. The Court cannot find that here. As set out in Hutson v. McDonnell Douglas Corp., on page 19 of this Order,

> The employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers.

Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).

The Court cannot give the plaintiff the relief she seeks simply because she is persuaded that she was the best person for the job.  That decision is for the employer to make; and, except for decisions based on illegal motivations, the employer is free to consider whatever criteria it so chooses.

## V.  CONCLUSION

**IT IS THEREFORE HEREBY ORDERED** that the judgment of this Court is in favor of the defendant.  The Court finds that the defendant did not illegally discriminate against the plaintiff on the basis of her age.  Because the Court finds in favor of the defendant, the Court will not discuss the issue of what damages may or may not be available.

**IT IS FURTHER HEREBY ORDERED** that this case is dismissed.

**IT IS SO ORDERED** this 4th day of March, 2008.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

24