IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| JEAN M. KING, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA and USDA SECRETARY OF AGRICULTURE, Michael O. Johanns, in his official capacity, <br><br> Defendant. | **No. 06-CV-4023-DEO** <br><br> **ORDER** |

## I. INTRODUCTION

This matter was tried to the Court, and the Court determined that Defendant United States of America should prevail. Plaintiff appealed to the United States Court of Appeals for the Eighth Circuit. The case is now back in front of this Court because the Eighth Circuit remanded for further proceedings.

In the Order issued by the Eighth Circuit, at page 10, it states:

> King also argues that the district court clearly erred in finding that the USDA's non-discriminatory reasons were not pretexts for age discrimination. See Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1335 n.9 (8th Cir. 1996) ("After a bench trial, a trial court's finding of pretext-for-age-discrimination is reviewable for clear error."). We cannot, however, determine whether the court's

finding was clearly erroneous because the district court failed to make a finding of fact concerning Triplett's testimony regarding Dunfee's alleged statement to her at a retirement party in March or April 2005. This statement is one of the statements that King alleged exhibited the committee's preference for younger employees and demonstrated pretext. Because the district court's finding on this fact could affect its consideration of the pretext issue, we conclude that our review is hindered and remand is appropriate. See Cody, 139 F.3d at 1200.

The Eighth Circuit discussed the following testimony given by Triplett when questioned by Plaintiff's counsel:

> Q: Okay. And can you tell me during that course of time [at the retirement party], did you speak to Mr. Dunfee at all about the situation in Le Mars?
>
> A: Yes, I did. Because I knew, from my understanding, it had been a strained relationship over there and stuff. And I approached him and I said I heard that through the hirings and everything, it was kind of strained in the Le Mars Agency over there.
>
> Q: And how did Mr. Dunfee respond?
>
> A: He told me that he was doing what was expected of the area directors-well, they were district directors at the time. He was doing what was expected of them because it was Dr. Dan's philosophy to hire younger[,] educated people to fill our positions.

Tr. 109.

2

In Defendant's cross examination of Triplett, Triplett testified as follows:

> Q: Okay. And Mr. Dunfee basically, offhand remark at a cocktail party, says Mr. Brown's philosophy, because he was from education, was to hire young[,] educated people, correct?
>
> A: Yes, he did.

Tr. 123.

In the Eighth Circuit Opinion, on page 8, the court set out the following:

> The court's omission of this statement stands in stark contrast to its thorough recitation and analysis of the other three statements by Brown and Dunfee alleged by King to be direct evidence. The court's omission is particularly significant because the court noted that it would have found any "statements made after the hiring decision was implemented, explaining why the decision maker chose one candidate over another" to be relevant if such evidence had been presented. At least one reasonable interpretation of Triplett's testimony, if accepted as true, fits the court's criterion because it shows that Dunfee's statement in March or April 2005 was made shortly after the selection committee's March 4, 2005 decision and it arguably demonstrated discriminatory animus in the decision making process.

After the Eighth Circuit's ruling came down, this Court entered an Order directing the parties to file briefs setting out their positions as to the issues now before this Court.

3

In Plaintiff's response to Defendant's position on remand, Doc. No. 69, at page 3, Plaintiff stated as follows:

> Defendants articulate no support for this position and both the trial and appellate court have already determined that the statements at issue constitute direct evidence and the only question for the court is the credibility of such evidence.

At the trial before this Court, Mr. Dunfee was called as a witness. Counsel for Plaintiff had extensive cross examination. On pages 411-412 of the trial transcript, counsel for Plaintiff asked Mr. Dunfee the following questions:

> Q: Wasn't it Dr. Brown that first said "I think Ms. Evans is the person we should hire"?
>
> A: That is correct.
>
> Q: And, Dr. Brown, you testified earlier, was much in favor of hiring young people with college degrees, isn't that true?
>
> A: Dr. Brown wanted new people in the agency. Not necessarily young. Dr. Brown felt that we needed more college educated employees.
>
> Q: And would it be true that the-your experienced people in the agency would be less likely to have college degrees; is that correct?
>
> A: That would be correct.

4

> Q: So those older individuals then would be disadvantaged under Dr. Brown's desire to hire young people with advanced degrees?
>
> A: I should back up just a little bit. Basically almost -- not 100%, about most of our loan writing officials would have had a college degree. Like myself, when I went to work for the agency, to get into the management and loan writing, I had to have a college degree to get there. That was a requirement at the time. So it was those people that migrated to the agency over the years. Most of our loan writing officials would have college degrees.
>
> Q: So those employees and those older employees without a college degree would be disadvantaged under Dr. Brown's desire to employee younger people with college degrees, isn't that true?
>
> A: That is true.

While there is a little conflicting testimony by Mr. Dunfee as set out above, his primary statement was that it was not necessarily younger, but new and well-educated people that Dr. Brown wanted to bring in to the agency.

## II. ANALYSIS

### A. Credibility Issues

The Eighth Circuit has in effect asked this Court to make a finding as to the credibility of Ms. Triplett's testimony

given that Mr. Dunfee denied at trial that age was considered in the hiring process. To make this finding, this Court also deems it relevant to discuss the credibility of Mr. Dunfee. This Court is aware that Defendant argues Ms. Triplett signed an affidavit about Mr. Dunfee's statement prior to her trial testimony, and that the affidavit did not mention the word "younger." This Court, however, has no real way of determining whether Mr. Dunfee used the word "younger" in their conversation as set out in that question on page 2 of this Order. Thus, this Court has no way, because of the limited testimony before it by Ms. Triplett and Mr. Dunfee, to flat out say that Ms. Triplett is more credible than Mr. Dunfee, or vice versa. Neither Plaintiff's nor Defendant's counsel questioned Mr. Dunfee at trial about his statement to Ms. Triplett. Mr. Dunfee did, however, testify that Plaintiff's age was not considered and that age was never discussed on any of the applicants.[1] While the Court finds Mr. Dunfee's trial testimony somewhat conflicting with his alleged statement to Ms. Triplett, the Court cannot conclude that his testimony should be discredited.

Regarding Ms. Triplett, there is no evidence before the

---

[1] Dr. Brown is deceased and was not a witness at trial, although his deposition was accepted into the record.

Court that shows Ms. Triplett was biased or had any ulterior motives when she testified under oath at trial. As mentioned, Ms. Triplett's affidavit, which was submitted at the summary judgment stage of this case, did not include the word "younger" when discussing Mr. Dunfee's statement at the retirement party. As Plaintiff noted, however, this affidavit was prepared by a government investigator and not by Ms. Triplett. Therefore, the Court will give the arguably inconsistent prior statement less weight than it otherwise may had Ms. Triplett prepared the affidavit herself. For purposes of this Order, the Court is persuaded that Ms. Triplett's testimony at trial was credible.

As set out above, this Court finds it hard to actually say that either Ms. Triplett or Mr. Dunfee were exaggerating or mistaken in their testimony, but the Court is now concluding that Mr. Dunfee probably said "younger" in his statement to Ms. Triplett, and that it can well be argued that the statement expressed discriminatory animus.

**B. Direct Evidence and Liability**

The next step is to determine whether Mr. Dunfee's statement to Ms. Triplett constitutes direct evidence of age discrimination.

7

> Direct evidence is evidence that establishes a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006), quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997); Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006). Direct evidence includes "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." Id. at 966.

Shaffer v. Potter, 499 F.3d 900, 904 (8th Cir. 2007). "'[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" Twymon, 462 F.3d at 933 (citing Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)). Direct evidence may, however, "include evidence of actions or remarks of the employer that reflect a discriminatory attitude," "[c]omments which demonstrate a discriminatory animus in the decisional process, or those

8

uttered by individuals closely involved in employment decisions..." Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (internal citations and quotations omitted).

In this case, there is no doubt in this Court's mind that Dr. Brown personally made the final decision to select Ms. Evans. Mr. Dunfee was also there, and he says in effect it was a joint decision. Furthermore, Mr. Dunfee had personal knowledge of Dr. Brown's motivations for hiring Ms. Evans. Mr. Dunfee said that during the selection meeting, he was well aware that Dr. Brown wanted to put in the agency people who had college degrees and who were smarter. Mr. Dunfee did not say anything to counteract Dr. Brown's reasons, including not even mentioning that Plaintiff had a fine record.

Defendant argues that if Mr. Dunfee made the statement, he did not make it in reference to the specific decision to hire Ms. Evans. The evidence shows, however, that Mr. Dunfee allegedly made the statement in March or April 2005, shortly after Ms. Evans was hired. Ms. Triplett testified that she asked Mr. Dunfee specifically about the strained relationships in the Le Mars agency. She further testified that it was her understanding that she and Mr. Dunfee discussed the recent hiring decision of Ms. Evans, since "that's what the hiring

9

had been at that time." This Court is persuaded that Mr. Dunfee made the statement close in time and in reference to the decision to hire Ms. Evans over Plaintiff.

Moreover, this statement constitutes more than a "stray remark" and is sufficient for a reasonable factfinder to infer that age was more likely than not a motivating factor in hiring Ms. Evans over Plaintiff. Mr. Dunfee informed Ms. Triplett at the retirement party that Dr. Brown's hiring philosophy was to hire young, educated individuals. A reasonable factfinder could infer from this statement that age and education were the two primary factors that Dr. Brown considered in his hiring decision. The Court therefore concludes that Ms. Triplett's testimony regarding Mr. Dunfee's statement pertained to the selection process of Ms. Evans and Plaintiff and, if he used the word "younger," it certainly can be argued that it establishes discriminatory animus.[2]

---

[2] This finding does not alter this Court's opinion that the other statements discussed in the March 4, 2008, Order were not direct evidence of discrimination for the reasons stated therein. The direct evidence discussed in this Order does, however, shift the burden of persuasion to Defendant. The Court nevertheless finds that the non-discriminatory criteria set out in the March 4 Order, which are referred to on pages 11 and 12 of this Order, were also substantially considered by Dr. Brown and the hiring committee.

**C. Burden-Shifting Analysis**

Once Plaintiff produces direct evidence of discrimination, the burden of persuasion "rests with the [defendant] to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." Price Waterhouse v. Hopkins, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring); see also Gonnerman v. McHan Const., Inc., 520 F. Supp. 2d 1095, 1106 (N.D. Iowa 2007). In other words, Defendant can avoid liability if it proves it is more likely than not that Defendant would have selected Ms. Evans over Plaintiff had it not considered age. In light of Mr. Dunfee's statement to Ms. Triplett, this Court is, of course, trying to determine all of Dr. Brown's motivations for selecting Ms. Evans over Plaintiff and whether Defendant is liable to Plaintiff for age discrimination.

Defendant set out in its response to the Eighth Circuit remand, Doc. No. 67, at 3, the following reasons for selecting Ms. Evans over Plaintiff:

> While both Evans and plaintiff were qualified for the job and met the minimum requirements, Evans held a Master's Degree. She was upbeat and offered new ideas for the RD department. She had a go-getter, fire in the belly attitude RD needed. She

11

had good communication and computer skills
and had prior loan writing experience.
While plaintiff was also qualified, she had
a negative interview and did not have the
college degree Dr. Brown was seeking.

In this Court's Order of March 4, 2008 (Doc. No. 49), this Court further discussed Defendant's non-discriminatory reasons for hiring Ms. Evans and found, in relation to the indirect evidence discussed therein, the following:

> The Court is persuaded that the defendant's
> explanations of its hiring decision were
> honest and that they were not a pretext for
> illegal discrimination. As set out on
> pages 21 and 22 of this Order, there were
> serious mistakes and oversights unfair to
> the plaintiff; but there was no evidence
> that they related to her age. Mrs. King's
> "contentions and speculation" as to the
> rationale behind the hiring decision are
> not enough. Girten v. McRentals, Inc., 337
> F.3d 979, 982 (8th Cir. 2003).

While the Court acknowledges that it did not mention Mr. Dunfee's statement at the time of the March 4, 2008, Order and that his statement is evidence of discriminatory animus, the Court is nevertheless persuaded that the evidence and testimony from the individuals at trial who each had personal knowledge of the hiring criteria, including Mr. Helmbrecht, Ms. Toney, and Mr. Dunfee, show that Dr. Brown also considered and relied on non-discriminatory reasons as a basis for his decision. Testimony from these individuals further shows that

education was perhaps the most substantial factor in Dr. Brown's consideration.[3] The Court is persuaded that the testimony from these individuals is credible and that the non-discriminatory reasons, especially the desire for hiring new and educated individuals, were substantial factors in Dr. Brown's consideration.

On page 6 of Defendant's brief, at Doc. No. 67, Defendant further set out the following:

> Dr. Brown had a well-documented history of selecting individuals over the age of 40 for positions. Statistics and testimony provided by Toney at trial indicated that during Dr. Brown's tenure at RD, he hired 17 new employees. Of that 17, only seven were under the age of 40, which means 59% of Brown's new hires were in the protected age group. R. 111. Two of these hires were over the age of 60. In regard to promotions, Dr. Brown promoted 30 individuals at RD. Of that 30, only nine were under the age of 40. Thus, 70% of RD's promotions were to individuals over the age of 40. R. 111.

Plaintiff argues that the Court should not consider these statistics, reasoning this is not a disparate impact case. This Court, however, is not making its decision in this case based on these statistics, but it certainly feels it is

---

[3] For example, Dr. Brown implemented the opportunity for his employees to receive financial assistance from Defendant if the employees pursued a college education.

appropriate to consider them.  This Court is persuaded that these statistics certainly can be considered and are relevant in discussing and deciding Dr. Brown's discriminatory animus generally.  While these statistics may not necessarily reflect Dr. Brown's motivations for the specific position in dispute here, they do show that in many hiring decisions, age was either not a factor at all, or at least not a factor so significant that Dr. Brown would not have hired or promoted them based on their age.

The Court is persuaded it is more likely than not that Defendant would have hired Ms. Evans over Plaintiff even in the absence of considering age.  Defendant's non-discriminatory reasons set forth in the Court's previous Order remain credible as to why Defendant hired Ms. Evans over Plaintiff.  While Mr. Dunfee only provided Ms. Triplett two reasons for hiring Ms. Evans (that she was young and educated), the Court will not discount other non-discriminatory reasons to which he and others testified at trial.  In the short discussion they had, it is not fatal that Mr. Dunfee did not mention each and every factor included in Dr. Brown's hiring criteria.  Ms. Triplett was not privy to that information; she was not an applicant for the position,

14

and she was not a member of the hiring committee.

This Court's conclusion that Ms. Triplett was a credible witness, as set out above, has not changed the ultimate result in this case. While the Court is now persuaded, based partially on the fact that Mr. Dunfee's statement to Ms. Triplett included the word "younger," that Dr. Brown considered age as one motivating factor in the selection process of Ms. Evans, the Court is also persuaded that Defendant more likely than not would have hired Ms. Evans even without considering age. The finding of direct evidence in this case does not change the Court's previous finding that Defendant offered valid, non-discriminatory reasons for hiring Ms. Evans over Plaintiff. The Court is also persuaded that the evidence and testimony introduced at trial support a finding that education was the most substantial factor in Dr. Brown's consideration. Therefore, Plaintiff's position that the Court should reverse itself is denied.

III. CONCLUSION

**IT IS THEREFORE HEREBY ORDERED** that the judgment of this Court remains in favor of Defendant.

**IT IS SO ORDERED** this 4th day of June, 2009.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa