IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

JEAN M. KING,

      Plaintiff,

vs.

UNITED STATES OF AMERICA;
USDA SECRETARY OF
AGRICULTURE, Michael O.
Johanns, in his official
capacity,

      Defendant.

No. 06-CV-4023-DEO

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFF'S MOTION TO
AMEND JUDGMENT PURSUANT TO
FED. R. CIV. P. 59(e)**

_____

## I. INTRODUCTION

This matter is before the Court on Plaintiff Jean King's motion to amend the Court's June 4, 2009, Order and Judgment ("June 4 Order") (Doc. No. 72), pursuant to Federal Rule of Civil Procedure 59(e). Doc. No. 73. The Court issued the June 4 Order on remand from the United States Court of Appeals for the Eighth Circuit[1] in light of the statement made by Rural Development's Area Director, Mr. Dunfee, to Ms. Triplett shortly after Defendant hired Ms. Evans for the Single Family Housing Specialist position at Rural Development.[2] The Court

_____

[1] King v. United States, 553 F.3d 1156 (8th Cir. 2009).

[2] Ms. Triplett testified at trial that Mr. Dunfee told her "[he] was doing what was expected of them because it was Dr. [Brown's] philosophy to hire younger[,] educated people to fill our positions." Tr. 109.

determined that this statement constituted direct evidence of discriminatory animus under the Age Discrimination in Employment Act ("ADEA"), but nevertheless found that Defendant more likely than not would have hired Ms. Evans over Plaintiff even in the absence of considering age. Thus, the Court reimposed judgment for Defendant in this case.

In her Rule 59(e) motion, Plaintiff argues that the Court committed clear errors of law and fact in the June 4 Order. First, Plaintiff argues that the Court committed a clear error of law when it did not grant judgment in favor of Plaintiff after finding that Mr. Dunfee's statement to Ms. Triplett constituted direct evidence of discriminatory animus. Plaintiff argues that the Court improperly applied the mixed-motives burden-shifting framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as adopted by the Eighth Circuit. Although the Court found that Defendant more likely than not would have hired Ms. Evans even in the absence of considering age, Plaintiff argues that such a finding only limited the relief to which Plaintiff was entitled.[3] Thus,

_____

[3] Plaintiff cited to Gagnon v. Sprint Corp., 284 F.3d 839 (8th Cir. 2002), to support her argument. However, in Gagnon, the plaintiff alleged a violation of Title VII, where Plaintiff here alleged a violation of 29 U.S.C. § 623(a)(1) of the ADEA. As the Court will discuss below, the standard (continued...)

Plaintiff argues that the Court committed a clear error of law when it entered judgment in favor of Defendant. Next, Plaintiff argues that the Court committed a clear error of fact when it concluded that Defendant more likely than not would have hired Ms. Evans over Plaintiff even in the absence of considering age.

Subsequent to the Court's June 4 Order and Plaintiff's Rule 59(e) motion, the United States Supreme Court issued its opinion in Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (June 18, 2009) ("Gross II"). The Supreme Court in Gross II held that the Price Waterhouse mixed-motives burden-shifting framework did not apply to disparate treatment cases under the ADEA.

As a result of the subsequent decision in Gross II, the question arose in this Court as to whether the Court should consider Plaintiff's Rule 59(e) motion under Price Waterhouse, which was the controlling authority at the time of the Court's June 4 Order, or under Gross II, in which the Supreme Court found Price Waterhouse inapplicable to ADEA claims similar to Plaintiff's claims here. The Court permitted briefing

---

[3](...continued)
described in Gagnon, which applied to Title VII claims, did not apply to ADEA claims.

regarding the potential effect of <u>Gross II</u> to Plaintiff's claims and subsequently held a hearing on the matter. After carefully considering Plaintiff's arguments in support of her Rule 59(e) motion, the Court is persuaded that judgment would remain in favor of Defendant under both <u>Price Waterhouse</u> and <u>Gross II</u>. Thus, the Court need not answer the question of whether <u>Gross II</u> should control the Court's consideration of Plaintiff's Rule 59(e) motion.

In light of the arguments surrounding Plaintiff's Rule 59(e) motion, the Court deems it appropriate to first address the arguments raised in Plaintiff's motion with respect to the Court's application of the <u>Price Waterhouse</u> mixed-motives burden-shifting framework as well as the Court's factual findings. Then, the Court will analyze Plaintiff's claims under the principles set forth in <u>Gross II</u>.

## II.  LAW AND ANALYSIS

### A.  Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e)

"Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment." <u>Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills</u>, 141 F.3d 1284, 1286 (8th Cir. 1998). A motion to

4

alter or amend a judgment pursuant to Rule 59(e) "serves a limited function of correcting manifest errors of law or fact or to present newly discovered evidence." Id. (internal quotations omitted); see also United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Id. Finally, this Court has broad discretion in determining whether to grant or deny a Rule 59(e) motion. Id.

**B. Review of the Court's June 4 Order for Clear Errors of Law and Fact**

    **1. Whether the Court Committed a Clear Error of Law Under _Price Waterhouse_ When it Entered Judgment in Favor of Defendant**

In Price Waterhouse, the Supreme Court held that an employer would avoid liability for sex discrimination under Title VII if the employer could prove by a preponderance of the evidence that it would have made the same employment decision even in the absence of considering the discriminatory factor. Price Waterhouse, 490 U.S. at 258. The Eighth Circuit subsequently applied the Price Waterhouse burden-shifting framework set forth in Justice O'Connor's concurring opinion to cases under Title VII and the ADEA. According to

this framework, a plaintiff was required to show direct evidence of discrimination to shift the burden of persuasion to the employer to prove it would have made the same employment decision even in the absence of considering the discriminatory factor. Id. at 276 (O'Connor, J., concurring); see also Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991).

In 1991, Congress amended Title VII and partially overruled Price Waterhouse when it enacted the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (the "1991 Act"). Section 107 of the 1991 Act permitted a finding of liability if the plaintiff demonstrated that "race, color, religion, sex, or national origin was a motivating factor" for the adverse employment decision, "even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).[4] Section

---

[4] 42 U.S.C. § 2000e-2(m), which Congress enacted through § 107 of the 1991 Act, states the following:

> (m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices
>
> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even
> (continued...)

107 also provided that, once a plaintiff established a violation under § 2000e-2(m) by demonstrating that race, color, religion, sex, or national origin was a motivating factor for the defendant employer's adverse employment decision, the employer would not be absolved of liability by proving it would have made the same decision even in the absence of such consideration; rather, under § 107, such proof merely restricted the remedies to which a plaintiff who proved a violation under § 2000e-2(m) was entitled.  See 42 U.S.C. § 2000e-5(g)(2)(B).[5]

Although Congress amended only Title VII when it enacted § 107 of the 1991 Act, the Eighth Circuit nevertheless

---

[4](...continued)
    though other factors also motivated the practice.

[5]  42 U.S.C. § 2000e-5(g)(2)(B), which Congress enacted through § 107 of the 1991 Act, states in relevant part, the following:

    (B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

    (i) may grant declaratory relief, injunctive relief . . . and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title ..."

extended application of the mixed-motives burden-shifting framework set forth in Price Waterhouse, as modified by § 107 of the 1991 Act, to ADEA claims.[6]   The Eighth Circuit, however, applied (or at least cited to) the unmodified Price Waterhouse burden-shifting framework for ADEA claims until approximately 1998.[7]

This Court is familiar with this line of cases; however, in Gross v. FBL Fin. Servs., Inc., 526 F.3d 356 (8th Cir. 2008) ("Gross I"),[8] the Eighth Circuit concluded:   "[42

---

[6]   See Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999) ("Under this modified Price Waterhouse standard, a defendant is liable for [age] discrimination upon proof by direct evidence that an employer acted on the basis of a discriminatory motive, and proof that the employer would have made the same decision absent the discriminatory motive is only relevant to determining the appropriate remedy.") (citing Fast v. Southern Union Co., 149 F.3d 885, 889 (8th Cir. 1998)); see also Bauer v. Metz Baking Co., 59 F. Supp. 2d 896, 901-02 (N.D. Iowa 1999) (citing the modified Price Waterhouse standard).

[7]   See, e.g., Kneibert v. Thomson Newspapers, Michigan Inc., 129 F.3d 444, 451 (8th Cir. 1997) ("When an employee produces direct evidence that an illegitimate criterion such as age 'played a motivating part in [the] employment decision' . . . the burden shifting standards of Price Waterhouse apply. As such, 'the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account.'") (quoting Beshears, 930 F.2d at 1353, and Price Waterhouse, 490 U.S. at 258).

[8]   Gross I was still on appeal to the Supreme Court when the Court issued its June 4 Order.

8

U.S.C.] § 2000e-2(m) does not apply to claims arising under the ADEA.  By its terms, the new section applies only to employment practices in which 'race, color, religion, sex, or national origin' was a motivating factor."  Id. at 361.  The court reasoned that when Congress amended Title VII by adding § 2000e-2(m), it did not also amend the ADEA even though it addressed the ADEA elsewhere in the 1991 Act.[9]  Id.  Gross I appears to be the first time the Eighth Circuit expressly held that § 2000e-2(m) did not apply to ADEA claims,[10] though the

---

[9]    The issue before the Eighth Circuit in Gross I was whether a plaintiff must present direct evidence of discrimination to receive a mixed-motives jury instruction under the ADEA.  The employee argued that the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), applied to ADEA claims.  In Desert Palace, the Court held that a plaintiff bringing a Title VII claim under § 2000e-2(m) did not need to present direct evidence of discrimination to obtain the mixed-motives jury instruction.  In Gross I, the Eighth Circuit held that Desert Palace applied only to Title VII claims and did not undermine the Price Waterhouse standard for ADEA claims.  The court did not expressly address or overrule its prior line of cases dealing with the issues raised in Plaintiff King's Rule 59(e) motion.  However, both the direct evidence issue presented in Gross I and the liability and affirmative defense arguments brought by Plaintiff in this case relate directly to § 107 of the 1991 Act.  As mentioned, § 107 of the 1991 Act did not amend the ADEA.

[10]    Several other circuits have previously found § 107 of the 1991 Act inapplicable to the ADEA.  See Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 512 n.3 (3d Cir. 2004); Equal Employment Opportunity Comm'n v. Warfield-Rohr Casket Co., 364 F.3d 160, 164 n.2 (4th Cir. 2004); Lewis v. Young Men's
(continued...)

court showed subtle signs of reverting to the unmodified <u>Price Waterhouse</u> standard as recently as 2007.[11]

Because the Eighth Circuit in <u>Gross I</u> concluded that § 2000e-2(m) did not apply to ADEA claims, this Court was persuaded the same analysis must extend to § 2000e-5(g)(2)(B) where, as in this case, an employer proved it would have made the same employment decision even in the absence of considering age. According to the statute's plain language, § 2000e-5(g)(2)(B) applies to "a claim in which an individual proves a violation <u>under section 2000e-2(m)</u>." (Emphasis added). Section 2000e-5(g)(2)(B) would therefore not apply unless a plaintiff proved a violation under § 2000e-2(m) and, as the Eighth Circuit concluded in <u>Gross I</u>, a plaintiff could not bring an ADEA claim within the confines of § 2000e-2(m). Thus, neither § 2000e-5(g)(2)(B) nor § 2000e-2(m) applied to ADEA claims. As a result, § 107 of the 1991 Act did not in effect overrule the affirmative defense established in <u>Price Waterhouse</u> for ADEA claims, on which this Court relied to find

---

[10](...continued)
<u>Christian Ass'n</u>, 208 F.3d 1303, 1305 (11th Cir. 2000) (per curiam).

[11] <u>See</u>, e.g., <u>Morgan v. A.G. Edwards & Sons, Inc.</u>, 486 F.3d 1034, 1042 (8th Cir. 2007) (citing to the direct evidence model in <u>Kneibert</u>, 129 F.3d at 451, in turn quoting <u>Beshears</u>, 930 F.2d at 1353, and <u>Price Waterhouse</u>, 490 U.S. at 258).

judgment for Defendant in this case. The Court's application of the affirmative defense established in Price Waterhouse and the mixed-motives burden-shifting framework applied to Plaintiff's ADEA claims in the June 4 Order was appropriate under existing authority at that time.[12]

> **2. Whether the Court Committed a Clear Error of Fact When it Found that Defendant More Likely Than Not Would Have Hired Ms. Evans Over Plaintiff Even in the Absence of Considering Age**

Plaintiff argues that the Court made numerous factual errors in the June 4 Order and, in light of these errors, the Court could not have found that Defendant more likely than not would have hired Ms. Evans over Plaintiff even in the absence of considering age. Plaintiff first argues the Court erred in

---

[12] Prior to the Eighth Circuit's holding in Gross I, the court in Johnson v. Harvey, No. 05-CV-01773-GTE, 2007 WL 201225 (E.D. Ark. Jan. 24, 2007), directly addressed this issue. The court stated:

> [t]he [1991 Act] altered the legal consequences of an employer's affirmative defense by providing that such proof would "not absolve it of liability, but [would instead] restrict[ ] the remedies available to a plaintiff." [citing Desert Palace, 539 U.S. at 94-95 and § 2000e-5(g)(2)(B)]. Because Congress did not similarly amend the ADEA, ADEA mixed-motive cases remain subject to the Price-Waterhouse analysis.

2007 WL 201225, at *3 n.6.

making the following findings:

> [w]hile both Evans and [P]laintiff were qualified for the job and met the minimum requirements, Evans held a Master's Degree. She was upbeat and offered new ideas for the RD department. She had a go-getter, fire in the belly attitude RD needed. She had good communication and computer skills and had prior loan writing experience. While plaintiff was also qualified, she had a negative interview and did not have the college degree Dr. Brown was seeking.

June 4 Order, at 11 (quoting Def. Response Br., Doc. No. 67, at 3). In response to these findings, Plaintiff asserts essentially the same arguments she asserted at and subsequent to trial in this matter. She bases these arguments predominantly on her work experience in and knowledge of Single Family Housing loan policies and procedures as compared to Ms. Evans.

The Court found from the early stages of this matter that Plaintiff was well qualified for the position; however, where Plaintiff's qualifications exceeded Ms. Evans' in experience, Ms. Evans' qualifications exceeded Plaintiff's in education. The Single Family Housing Specialist position did not require that an applicant have previous experience in the industry if the applicant possessed a college degree. Thus, barring all other considerations, Ms. Evans qualified for the position

solely because of her masters degree.  And, as the Court previously concluded based on the evidence and testimony from Mr. Helmbrecht, Ms. Toney, and Mr. Dunfee, each of whom the Court found credible,

> education was perhaps the most substantial factor in Dr. Brown's consideration. [For example, Dr. Brown implemented the opportunity for his employees to receive financial assistance from Defendant if the employees pursued a college education.]

June 4 Order, at 12-13 and n.3.

Moreover, while the Court found that age was a motivating factor for Defendant's decision to hire Ms. Evans over Plaintiff, the Court did not discredit other reasons offered for the decision.[13]  As previously noted, the record shows

---

[13]    Defendant's nondiscriminatory reasons set forth in the Court's [March 4, 2008,] order remain credible as to why Defendant hired Ms. Evans over Plaintiff.  While Mr. Dunfee only provided Ms. Triplett two reasons for hiring Ms. Evans (that she was young and educated), the Court will not discount other nondiscriminatory reasons to which he and others testified at trial.  In the short discussion they had, it is not fatal that Mr. Dunfee did not mention each and every factor included in Dr. Brown's hiring criteria.  Ms. Triplett was not privy to that information; she was not an applicant for the position, and she was not a member of the hiring committee.

June 4 Order, at 14-15.

that Dr. Brown was unimpressed with Plaintiff's interview for
the position.  He stated that Plaintiff had a negative phone
interview and failed to offer any new ideas for Rural
Development.  Most importantly, as mentioned, Plaintiff did
not have the college degree Dr. Brown was seeking, where Ms.
Evans had a masters degree along with her other legitimate
qualifications for the position.  Thus, because of Ms. Evans'
education and qualifications, her lack of practical experience
in Single Family Housing would not have changed Dr. Brown's
ultimate decision to hire her over Plaintiff.

Plaintiff further argues that the Court erred in finding
that Dr. Brown had a history of hiring or promoting employees
over the age of forty.  The Court understands Plaintiff to
dispute the hiring statistics on which the Court relied as
unrepresentative of Dr. Brown's actual hiring preferences.
These statistics, supported by Ms. Toney's testimony, provide
the following information:

> during Dr. Brown's tenure at RD, he hired
> 17 new employees.  Of that 17, only seven
> were under the age of 40, which means 59%
> of Brown's new hires were in the protected
> age group.  R. 111.  Two of these hires
> were over the age of 60.  In regard to
> promotions, Dr. Brown promoted 30
> individuals at RD.  Of that 30, only nine
> were under the age of 40.  Thus, 70% of
> RD's promotions were to individuals over

the age of 40. R. 111.

June 4 Order, at 13 (quoting Def. Response Br., Doc. No. 67, at 6, Def. Ex. F).

To support her argument, Plaintiff cites to the individual circumstances of several of Defendant's employees over the age of forty. The Court has considered these employees as it did at trial. At trial, the Court concluded that several employees over the age of forty who were promoted within Rural Development were merely reassigned to the same position, albeit at a higher pay grade.[14] Presumably, however, there were a number of employees over the age of forty within Rural Development who were promoted to higher ranking positions along with higher pay grades. Furthermore, ten out of seventeen, or fifty-nine percent (59%), of Dr. Brown's new hires were over the age of forty and came from outside of Rural Development. Thus, these statistics are entirely consistent with the Court's June 4 conclusion regarding its consideration of Dr. Brown's discriminatory animus generally.[15]

---

[14] Ms. Toney testified that she could not provide a specific number of employees who were similarly reassigned.

[15] The Court concluded:

(continued...)

Plaintiff also provides the names of two former employees over the age of forty, Ms. Sheets and Ms. Oxley, who Dr. Brown planned to transfer to other branches as a result of Rural Development's reorganization plan. Plaintiff argues these employment actions are evidence that Dr. Brown discriminated against older employees. There is, however, no evidence in the record to support Plaintiff's argument that Dr. Brown transferred Ms. Sheets and Ms. Oxley because of their age. As mentioned, Rural Development underwent a significant reorganization that affected many employees in addition to Ms. Sheets and Ms. Oxley. Thus, Plaintiff's reference to these two employees as evidence that Dr. Brown discriminated against older employees is neither logical nor persuasive. The Court is persuaded Plaintiff has not proven that the Court committed clear errors of fact sufficient to amend the June 4 Order.

---

[15](...continued)
> [w]hile these statistics may not necessarily reflect Dr. Brown's motivations for the specific position in dispute here, they do show that in many hiring decisions, age was either not a factor at all, or at least not a factor so significant that Dr. Brown would not have hired or promoted them based on their age.

June 4 Order, at 14.

**C.   The Supreme Court's Decision in <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S. Ct. 2343 (June 18, 2009) (<u>Gross II</u>), and Whether This Court's June 4 Order and Judgment for Defendant Would Change Under the <u>Gross II</u> Standard**

In this case, Defendant argues that the Supreme Court's decision in <u>Gross II</u> should have no impact on Plaintiff's pending Rule 59(e) motion because <u>Gross II</u> was decided after final judgment in this case.  The Court is persuaded, however, that Plaintiff's claims should nevertheless be analyzed under <u>Gross II</u>, given the significant effect of the Supreme Court's decision on ADEA claims.

In <u>Gross II</u>, the question presented was whether a plaintiff must present direct evidence of age discrimination to obtain a mixed-motives jury instruction in a lawsuit brought under the ADEA.  The Supreme Court, however, essentially expanded the scope of the question presented and held that a mixed-motives jury instruction under <u>Price Waterhouse</u> was never proper in an ADEA case.  The Court reasoned (as the Eighth Circuit recognized in <u>Gross I</u>) that when Congress amended Title VII in § 107 of the 1991 Act, it did not similarly amend the ADEA.  The Court noted, "[w]hen Congress amends one statutory provision but not another, it is presumed to have acted intentionally."  <u>Gross II</u>, 129 S. Ct.

17

at 2349. Because the Court held that the mixed-motives standard never applied to ADEA claims, the burden of persuasion never shifted to the defendant and remained at all times with the plaintiff, even when the plaintiff has produced evidence that age was one motivating factor in the employment decision. <u>Id.</u> at 2352.

The Supreme Court also reviewed the relevant text of the ADEA, which stated that "it shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, <u>because of</u> such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The Court determined that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age [was] that age was the 'reason' that the employer decided to act." <u>Gross II</u>, 129 S. Ct. at 2350. Therefore, the Court held that "a plaintiff bringing a disparate treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." <u>Id.</u> at 2352.

In our case, Plaintiff argues that this Court should interpret and apply Gross II in the following manner:

> The Supreme Court chose not to incorporate the Price Waterhouse framework into the ADEA and determined that the ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. The Plaintiff in this case, however, showed by direct evidence that the Defendant took adverse action because of her age. Age was the reason the employer acted. Since Price Waterhouse is no longer applicable to an ADEA claim, the Defendant cannot now argue that it would have made the same decision regardless of age, the burden shifting framework is no longer viable. Because the Plaintiff established direct evidence of age discrimination, she has satisfied the Supreme Court's determination in Gross [II] and should prevail.

Pl. Reply Br., Doc. No. 75, at 2-3 (internal citations omitted). In Plaintiff's supplemental brief, Plaintiff further argues that, under Gross II,

> the plaintiff need not establish that age was the sole factor that resulted in the adverse employment decision so long as plaintiff has established the causal relationship between age and the adverse action. Gross [II] stands for the proposition that plaintiff must prevail in this claim. To hold otherwise would require the plaintiff not only to establish that the employer make the decision based on age, but also to prove a negative. There is no requirement in Gross [II] that the plaintiff not only has to prove that

19

age was impermissibly utilized in making
the adverse employment decision, but also
that no other factors were considered or
that other permissible criteria that were
considered had no merit.

Pl. Supplemental Br., Doc. No. 78, at 4 (footnote omitted).

This Court is not persuaded by Plaintiff's proposed
application of Gross II. The appropriate application of Gross
II to this case does not depend on whether Plaintiff has
produced direct evidence that age motivated Defendant's
employment decision;[16] rather, this Court must determine
whether Plaintiff has proven that age was the but-for cause
for Defendant's employment decision. In other words, has
Plaintiff proven by a preponderance of the evidence that
Defendant would not have hired Ms. Evans over Plaintiff but
for Defendant's consideration of age? Direct evidence in
which age is merely one motivating factor among many for the
employer's decision (as it was in this case) does not
necessarily prove but-for causation, especially where the
Court concludes (as it did in this case) that the employer
more likely than not would have made the same decision even

---

[16] "A plaintiff must prove by a preponderance of the
evidence (which may be direct or circumstantial), that age was
the 'but-for' cause of the challenged employer decision."
Gross II, 129 S. Ct. at 2351 (emphasis added).

20

without considering age.[17]

In Plaintiff's briefs supporting her Rule 59(e) motion and at the hearing on the motion, Plaintiff's counsel repeatedly asserted that the Court found age was a "primary"

---

[17] In his dissent in <u>Price Waterhouse</u>, Justice Kennedy, joined by Chief Justice Rehnquist and Justice Scalia, advocated for a but-for application of Title VII discrimination cases in which the burden of persuasion remained at all times with the plaintiff. Justice Kennedy stated:

> Our decisions confirm that Title VII is not concerned with the mere presence of impermissible motives; it is directed to employment decisions that result from those motives. . . . If a motive is not a but-for cause of an event, then by definition it did not make a difference to the outcome. The event would have occurred just the same without it. Common-law approaches to causation often require proof of but-for cause as a starting point toward proof of legal cause. The law may require more than but-for cause, for instance proximate cause, before imposing liability. Any standard less than but-for, however, simply represents a decision to impose liability without causation. As Dean Prosser puts it, "[a]n act or omission is not regarded as a cause of an event if the particular event would have occurred without it."

<u>Price Waterhouse</u>, 490 U.S. at 282 (Kennedy, J., dissenting) (quoting W. Keeton et al., <u>Prosser and Keeton on Law of Torts</u> 265 (5th ed. 1984)) (internal citations omitted); <u>see also</u> <u>Gross II</u>, 129 S. Ct. at 2350 (citing <u>Prosser and Keeton</u>). Notably, both Justices Kennedy and Scalia joined the majority opinion in <u>Gross II</u>.

factor in Defendant's hiring decision. This assertion misconstrues the Court's actual findings and is simply wrong. In this Court's June 4 Order, the Court stated, based on Mr. Dunfee's statement to Ms. Triplett, that a "<u>reasonable factfinder could infer</u> . . . age and education were the two primary factors that Dr. Brown considered in his hiring decision." June 4 Order, at 10 (emphasis added). This Court, however, as the ultimate factfinder in this case, never found that age was a "primary" factor for Defendant's employment decision. The Court instead found that Defendant offered numerous valid, non-discriminatory reasons for hiring Ms. Evans over Plaintiff and that "the evidence and testimony introduced at trial support a finding that education was the <u>most substantial factor</u> in Dr. Brown's consideration." June 4 Order, at 15 (emphasis added); <u>see also</u> <u>supra</u>, at 11-14. The Court further concluded that age was one <u>motivating</u> factor for Defendant's decision. Specifically, the Court concluded:

> [w]hile the Court is now persuaded, based partially on the fact that Mr. Dunfee's statement to Ms. Triplett included the word "younger," that Dr. Brown considered age as <u>one motivating factor</u> in the selection process of Ms. Evans, <u>the Court is also persuaded that Defendant more likely than not would have hired Ms. Evans even without considering age</u>.

June 4 Order, at 15 (emphasis added); <u>see also</u> <u>supra</u>, at 11-
14. Thus, although a reasonable factfinder could infer, based
<u>solely</u> on Mr. Dunfee's statement to Ms. Triplett, that age and
education were the two primary factors for Defendant's
decision to hire Ms. Evans over Plaintiff, this Court
concluded, after considering the evidence and testimony in its
entirety, that age was merely one "motivating" factor among
many. Age was neither a "primary" nor "but-for" cause for
Defendant's employment decision in this case.

Plaintiff further contends that, because of <u>Gross II</u>,
"Defendant cannot now argue that it would have made the same
decision regardless of age." Nothing in <u>Gross II</u> precludes
Defendant from presenting evidence and argument to rebut
Plaintiff's case. <u>Gross II</u> merely states that the burden of
persuasion never shifts to the employer. The employer is
free, as is any defendant in ordinary litigation, to present
evidence and argument in support of its position. As
previously mentioned, presenting evidence and argument
supporting the position that the employer would have made the
same decision even without considering the illegitimate factor
(such as age in this case) is certainly one method to
disproving the plaintiff's argument that the illegitimate

factor was the but-for cause of the employment decision.

Finally, Plaintiff argues that, under Gross II, she "need not establish that age was the sole factor that resulted in the adverse employment decision so long as [P]laintiff has established the causal relationship between age and the adverse action." Pl. Supplemental Br., at 4. First, Plaintiff must prove more than a mere causal relationship between age and the adverse employment action; the causal relationship must meet a but-for standard. Second, the Court need not determine whether there may be more than a sole but-for factor for Defendant's employment decision under the Supreme Court's decision in Gross II.[18] As previously determined, age was merely one motivating factor among many in this case, but was not sufficiently determinative to Defendant's employment decision to rise to a but-for level. Thus, Plaintiff has not satisfied her burden under Gross II, and the Court concludes that age was not the but-for reason for Defendant's decision to hire Ms. Evans over Plaintiff.

---

[18] In Gross II, the Court determined "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age [was] that age was the 'reason' that the employer decided to act." Gross II, 129 S. Ct. at 2350 (emphasis added).

**III.     CONCLUSION**

For the reasons stated herein, the Court concludes that it did not commit clear errors of law or fact sufficient to amend its June 4 Order and Judgment in favor of Defendant. Furthermore, the Court concludes that Plaintiff has not met her burden under <u>Gross II</u>.

**IT IS THEREFORE HEREBY ORDERED** that Plaintiff's motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e), Doc. No. 73, is **denied.**

**IT IS SO ORDERED** this 9th day of February, 2010.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa